OTTO CANDIES, INC.,
Plaintiff-Appellant,

v.

M/V MADELINE D, her engines, tackle, etc., in rem, and Jessie J. Duet, d/b/a Duet Boat Company, in personam, Defendants-Appellees.

No. 82–3630.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1983.

Deutsch, Kerrigan & Stiles, G. Alex Weller, C.G. van Dalen, New Orleans, La., for plaintiff-appellant.

Lemle, Kelleher, Kohlmeyer, Hal C. Welch, New Orleans, La., for defendants-appellees.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

In this maritime case of negligent towage, the plaintiff owner ("Candies") sues the MADELINE D, a towing vessel, and its

owner to recover damages arising out of the capsizing and sinking of its tug the FERDIE CANDIES. Candies appeals from adverse judgment, contending, inter alia, that the district court, after finding that both vessels were operated in violation of a rule designed to assure navigational safety, erroneously refused to apply the *"Pennsylvania"* rule (creating a heavy presumption of fault for a maritime accident occurring when a vessel is being operated in violation of the rules of navigation). Finding merit to this contention, we reverse and remand to the district court.

The relevant facts as to the accident itself may be briefly stated:

The defendant MADELINE D and the plaintiff's FERDIE CANDIES were part of a flotilla towing a barge. MADELINE D was in the lead, in charge of steering and navigation of the flotilla. The FERDIE CANDIES was attached by a fifteen-foot towing hawser astern of the MADELINE D, and participated solely for the purpose of providing additional power. The towed barge was some forty feet behind the FERDIE CANDIES. The parties' witnesses differed as to the cause of the accident, which occurred when the towed barge struck the FERDIE CANDIES and caused it to capsize: the plaintiff Candies presented testimony that the mishap occurred when the MADELINE D veered sharply to the right and pulled the FERDIE CANDIES out of alignment with the two, causing the barge to strike it; the defendant MADELINE D's witnesses denied the sharp turn and testified that the cause of the accident was the FERDIE CANDIES's helmsman playing with the steering system and thus putting that vessel out of line with the rest of the flotilla and causing it to be struck by the towed barge.

The district court, after making findings of fact that merely summarized the testimony of the opposing witnesses,[1] concluded that "[t]here was little or no proof of the actual cause of the casualty" and that proof of the casualty alone was "insufficient to shift the responsibility for the accident to the MADELINE D", since "[t]o do so would be to allow plaintiff to prove its case by speculation and hypothesis." In therefore dismissing the plaintiff's suit, Candies, the owner of the tug, was thus required to bear the entire loss of the mishap.

*The* Pennsylvania *Rule Issue*

The district court also found that both vessels were at the time of the mishap being operated in violation of a statutory regulation designed "to assure safe navigation," which provides that an uninspected towing vessel shall be under "the actual direction and control" of a person licensed to operate that type of vessel in the particular geographic area. 46 U.S.C. § 405(b)(2).[2] At the time of the accident, an unlicensed deckhand was at the steering controls of both vessels, while the captain of the MADELINE D was not licensed.[3]

---

1. Candies also argues, with some force, that remand would be required because these "findings of fact" were not specific enough on the subsidiary facts relating to the critical issues of fault and credibility to afford a sufficiently definite predicate for appellate review. *See, e.g., Hydrospace-Challenger, Inc. v. Tracor/Mas, Inc.,* 520 F.2d 1030, 1033–34 (5th Cir.1975); *see also Golf City, Inc. v. Wilson Sporting Goods Co., Inc.,* 555 F.2d 426, 432–36 (5th Cir.1977). Because remand is required for the district court's error of law in failing to apply the *Pennsylvania* rule, we do not reach these forceful contentions, although by citing them we wish to alert the district court to them on the remand.

2. 46 U.S.C. § 405(b)(2) provides:

    An uninspected towing vessel in order to assure safe navigation shall, while underway,
    be under the *actual direction and control* of a person licensed by the Secretary to operate in the particular geographic area and by type of vessel under regulations prescribed by him. A person so licensed may not work a vessel while underway or perform other duties in excess of a total of twelve hours in any consecutive twenty-four hour period except in case of emergency. (Emphasis added).

3. The district court also noted that the FERDIE CANDIES' master, in violation of this statute, had been standing watch for sixteen hours straight (in excess of the statutory maximum of twelve, see 46 U.S.C. § 405(b)(2), quoted in note 2), before going down to sleep and leaving the craft under the actual direction and control of an inexperienced and unlicensed deckhand.

Accepting this conclusion of the district court,[4] we find that the district court erred as a matter of law in concluding that, because of the mutual statutory fault of both vessels, the plaintiff was "estopped from transferring its heavy burden of proof to defendant by invoking the rule of the *Pennsylvania.*" This rule provides that when a ship violates a statutory rule of navigation intended to prevent collisions, "the burden rests on the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *THE PENNSYLVANIA,* 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1873). *See also* Gilmore & Black, *The Law of Admiralty* § 10–25 at 898 (2d ed. 1975).

The rule shifts the burden of proof as to *causation* to the statutory offender, but it does not ipso facto impose liability. *Florida East Coast Railway Company v. Revilo Corporation,* 637 F.2d 1060, 1065–66 (5th Cir.1981); *Green v. Crow,* 243 F.2d 401, 403 (5th Cir.1957). Where both parties to a collision are guilty of statutory fault, the heavy presumption that the fault of each contributed to the accident may be rebutted by proof that, in fact, the fault of either of the parties was the sole cause of the accident or, instead, not a substantial contributing cause thereof. *Id.*

Here, the district court was unable to determine the cause of the FERDIE CANDIES' collision and, for whatever reason, made no credibility determination as between the opposing contentions as to whether steering negligence by an unlicensed deckhand on the part of either one

vessel or the other factually caused the accident. In that posture of the case, the invoked *Pennsylvania* rule required the district court to find that the statutory fault of both vessels contributed to the accident, unless it found that the fault of either (or of both, for that matter) could not have been a cause of the collision. The district court was in error of law in holding that one party or the other, because of mutual fault, was estopped from invoking the *Pennsylvania* rule, which is a rule of presumed causation not of clean hands-dirty hands moral blameworthiness.

In the absence of the requisite findings by the district court that would permit effective appellate review (*see* note 1, *supra*), it is necessary for us to vacate the take-nothing judgment entered against the plaintiff Candies and to remand this case to the district court for it to make such additional findings of fact as are necessary to decide the *Pennsylvania*-rule causation issues presented. If both parties are guilty of statutory fault (*but see* note 4 *supra*), these determinations should include: (a) whether either party had proved that its own fault could not have contributed to the collision; (b) the proportionate degree of fault of both, *Florida East Coast Railway Company, supra,* 637 F.2d at 1067, if neither vessel is exonerated from collision-causing statutory fault; and (c) if comparable fault cannot be fairly measured, a determination to that effect, with the consequence that the damages are to be allocated equally between the opposing parties, *see United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 421, 95 S.Ct. 1708, 1716, 44 L.Ed.2d 251 (1975).

---

**4.** Both parties contend that the other vessel, but not their own, was not within the regulation provided by 46 U.S.C. § 405(b)(2). The plaintiff Candies contends, without citation of authority, that the FERDIE CANDIES should not be considered a "towing vessel" within the meaning of the statute, because it merely provided an additional engine and was more in the nature of a "tow". The MADELINE D parties contend, based on inferences that they assert may be made from the record, that their vessel was exempt from the statutory requirements by virtue of 46 U.S.C. § 405(b)(3) which provides that the statutory regulation does not

apply to towing vessels of less than two hundred tons engaged in a service to the offshore oil and mineral exploitation industry, where the vessel's point of departure or ultimate destination is an offshore mineral exploitation site. Again, because of the conclusory nature of the district court's findings (see note 1), we are unable to review the merits of the latter contention and accept, for present purposes (but without prejudice to renewal of the contention on the remand), the district court's presumptively valid, Fed.R.Civ.P. 52(a), implicit conclusion that the facts in the record do not support such exemption.

*Conclusion*

Accordingly, we VACATE the judgment of the district court, and we REMAND this case for further proceedings not inconsistent with this opinion. The defendants-appellees to pay the costs of this appeal.

VACATED AND REMANDED.