897 So.2d 671 (2004)
Elfredroe LOVE
v.
AAA TEMPORARIES, INC.
No. 2003 CA 2735.
Court of Appeal of Louisiana, First Circuit.
November 10, 2004.
*672 Carvell A. Sims, Baton Rouge, Counsel for Plaintiff/Appellee Elfredroe Love.
Philip S. Brooks, Jr., New Orleans, Emile C. Rolfs, III, Baton Rouge, Counsel for Defendants/Appellants Apex Oil Company, Inc. and Petroleum Fuel and Terminal Company, Inc.
*673 Keely Y. Scott, Baton Rouge, Counsel for Defendant/Appellee Scottsdale Insurance Company.
David L. Dawson, Baton Rouge, Counsel for Defendant/Appellee AAA Temporaries, Inc.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this appeal, Apex Oil Company, Inc. and Petroleum Fuel and Terminal Company, Inc. (collectively referred to as "Apex") are before this court seeking review of a partial motion for summary judgment granted by the trial court finding them liable in tort for the injuries suffered by the plaintiff, Elfredroe Love.

FACTS AND PROCEDURAL HISTORY
On the evening of September 3, 1991, plaintiff sustained injuries to his back and neck when he fell while working as a deckhand on a barge at an Apex facility in Port Allen, Louisiana. Plaintiff had been assigned by AAA Temporaries, Inc. to work at the facility and was performing longshoring duties at the time of his injury. As a result of the injuries sustained, plaintiff filed suit against his direct employer, AAA Temporaries, Inc., pursuant to 33 U.S.C. § 905(a). He later filed a supplemental and amending petition wherein he added Apex as a defendant and asserted that because Apex had failed to secure Longshore and Harbor Workers (LHWCA) insurance coverage, he was electing to pursue his claims against Apex in tort in accordance with 33 U.S.C. § 905(a).
On January 29, 1999, plaintiff filed a partial motion for summary judgment on the issue of whether "a policy of Longshore and Harbor Workers insurance [was] available to the injured plaintiff on the date of his accident." After considering the arguments of the parties, the trial court determined that Apex did not have LHWCA coverage available at the time of the plaintiff's accident and issued written reasons on July 26, 1999, declaring the lack of coverage and finding plaintiff's action in tort to be proper. Apex was granted a devolutive appeal from a purported judgment issued on July 26, 1999; however, this court later dismissed the appeal on our finding that the July 26, 1999 written reasons for judgment issued by the trial court was not a valid, final judgment over which this court could exercise appellate jurisdiction. Love v. AAA Temporaries, Inc., 00-0638 (La.App. 1st Cir.9/28/01), 809 So.2d 292.
The trial court subsequently issued a valid final judgment on October 29, 2001, which Apex properly appealed. While that appeal was pending before this court, Apex filed a motion to supplement the record with certain "newly" discovered evidence, or in the alternative, to remand the matter to the trial court to allow the record to be supplemented with the evidence sought to be introduced. This court vacated the judgment of the trial court and granted the motion to remand, instructing the trial court to supplement the record with the evidence and to re-determine the issue of LHWCA coverage after considering the evidence to be submitted. Love v. AAA Temporaries, Inc., 00-0615 (La.App. 1st Cir.2/14/03)(unpublished decision). Plaintiff filed writs with the supreme court seeking review of this court's ruling, and by a per curiam decision, the supreme court granted the writ and reinstated the trial court's judgment. Love v. AAA Temporaries, Inc., 03-1460 (La.10/17/03), 858 So.2d 410.
While the issue of LHWCA coverage was still pending on appeal, the trial court *674 proceeded to determine the plaintiff's employment status and Apex's tort liability. On February 22, 2001, the trial court granted the plaintiff's motion for summary judgment on the issue of his employment status, deeming the plaintiff to be an employee of Apex on September 3, 1991, for the purposes of his suit under 33 U.S.C. § 905(a). On April 24, 2001, the trial court granted summary judgment in favor of the plaintiff, finding Apex liable for the plaintiff's accident. Following the denial of its motion for new trial on the issue of liability, Apex perfected the subject appeal.

ASSIGNMENTS OF ERROR
In this appeal, Apex contends that the trial court erred in granting plaintiff's motion for summary judgment based on the following issues:
Did the district court err in granting partial summary judgment in favor of plaintiff and against Apex and PF & T on the issue of liability in light of the conflicting testimony between the plaintiff and an alleged eye-witness as to the facts surrounding the alleged accident?
Did the district court err in granting partial summary judgment on the issue of liability in this jury trial case?
Did the district court lack jurisdiction to determine the issue of liability since the prerequisite issue of longshore and harbor worker's insurance coverage was on appeal at the time?

STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1st Cir.9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ferguson v. Plummer's Towing & Recovery Inc., 98-2894, pp. 3-4 (La.App. 1st Cir.2/18/00), 753 So.2d 398, 400.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Naquin v. Louisiana Power & Light Company, 98-2270, p. 4 (La.App. 1st Cir.3/31/00), 768 So.2d 605, 607, writ denied, 00-1741 (La.9/15/00), 769 So.2d 546. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966 A(2).
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).

DISCUSSION
In its first two assignments of error, Apex contends that conflicting testimony *675 as to how the plaintiff sustained his work-related injury created a genuine issue of material fact that should be submitted to the jury and precluded summary judgment. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. M.P.G. Construction, Inc. v. Department of Transportation and Development, State of Louisiana, 03-0164, p. 5 (La.App. 1st Cir.4/2/04) 878 So.2d 624, 628, writ denied, 04-0975 (La.6/4/04), 876 So.2d 85. The substantive law applicable to the matter before us is 33 U.S.C. § 905(a), which provides, in pertinent part:
Employer liability; failure of employer to secure payment of compensation
The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title. (Emphasis added).
As explained by the court in Reichert v. Chemical Carriers, Inc., 794 F.2d 1557, 1559 (11th Cir.1986), because a worker's fault is irrelevant in cases of claims for workers' compensation, it is logical to override the otherwise common defenses to liability asserted by defendants in situations where an employer is shown to have breached its duty to provide compensation coverage and to prevent such defendants from shifting all or part of the financial burden of an accident to the worker. Section 904(a) of Title 33 of the United States Code clearly mandates that "[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title."[1]
In the matter before us, the record discloses that only two witnesses to the accident giving rise to the alleged injuries sustained by the plaintiff were presented  the plaintiff's co-worker, Derrick T. Banks, and the plaintiff himself. Both the plaintiff and Mr. Banks were deposed and gave conflicting accounts of how the plaintiff was injured.
Both witnesses testified that it was well-known that there was a defective valve on the barge that constantly leaked oil, creating a safety hazard. However, in his deposition testimony, Mr. Banks testified that the plaintiff was standing in a large oil drip pan attempting to tighten the valve that was leaking oil into the pan, when he slipped and fell, sustaining injury. Plaintiff, on the other hand, testified that he *676 traversed an area of pipe, pulling a large water hose similar to that used by firefighters, in order to clean the area of the barge on which oil had leaked from the defective valve. Before climbing onto the pipe, the plaintiff testified that he had stepped in the oil on the deck. On reaching the area to be cleaned, he stated that while standing on a section of pipe, he sprinkled some solvent in the area of the oil leak and turned the spout on the water hose to release the water; the pressure generated by the release of the water from the hose, combined with the oil on his shoes, caused him to lose his balance and fall down between the pipes, sustaining injuries.
Although the two accounts of how the accident occurred substantially differ, they agree in three material respects: (1) an accident did occur; (2) the accident occurred while plaintiff was performing his job duties at an Apex facility; and (3) the leaking oil contributed in some manner to the accident. The unrefuted deposition testimony of Mr. Banks and the plaintiff clearly indicate negligence on the part of Apex in failing to provide a safe work environment. Since 33 U.S.C. § 905(a) precludes Apex's invocation of the defenses of assumption of risk, negligence of a fellow servant, or contributory negligence, and based on evidence that a work-related accident did occur due in some portion to Apex's negligence, Apex's liability is without question.
Furthermore, although Apex is correct in its assertion that summary judgment is not proper for any claims based on Apex's status as a vessel owner,[2] it is clear throughout the plaintiff's pleadings that his claims against Apex are solely in its capacity as an employer. In the motion for summary judgment on the issue of liability, the plaintiff expressly states "[t]he law and the evidence in this matter support this motion for partial summary judgment on the issue of the liability of the employer, [Apex,] to the Plaintiff, Elfredro (sic) Love, on the date of the accident, September 3, 1991, which is the legal basis of this litigation." (Emphasis added). Thus, we find that Apex's arguments in support of these two assignments of error to be without merit.
Finally, as to Apex's argument that the trial court lacked jurisdiction to render the judgment herein appealed, we find no merit. Article 1915 C of the Louisiana Code of Civil Procedure states that "[i]f an appeal is taken from any judgment rendered under the provisions of this Article, the trial court shall retain jurisdiction to adjudicate the remaining issues in the case." Apex argues that because its liability in tort hinged on a determination of whether or not on appeal it possessed LHWCA coverage at the time of the plaintiff's accident, the issue of liability was subsumed in the coverage issue; thus, the trial court lacked jurisdiction to determine liability while the coverage issue was pending on appeal. We disagree.
A similar argument was rejected by the supreme court in Clark v. Taylor, 97-1059 (La.6/30/97), 697 So.2d 240 (per curiam). In that case, the supreme court held that the trial court was not divested of jurisdiction to determine the issue of quantum while the judgment on liability from the bifurcated trial was pending on appeal, but noted that a trial court has the discretion *677 not to proceed with the issue of quantum pending the appeal. Likewise, although the finding of Apex's tort liability was contingent upon a determination of whether it possessed LHWCA coverage at the time of the plaintiff's accident, which determination was pending on appeal, the trial court still retained jurisdiction to determine the issue of liability. Accordingly, we reject this assignment of error.

CONCLUSION
Therefore, based on the foregoing discussion, we affirm the summary judgment rendered in this matter. All costs of this appeal are assessed to the appellants, Apex Oil Company, Inc. and Petroleum Fuel and Terminal Company, Inc.
AFFIRMED.
McCLEDNON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
For the following reasons, I respectfully concur in the result. As noted by the majority, the only two witnesses to the accident recalled substantially different details regarding the facts of the accident. However, both agreed on a critical issue, i.e. that the accident involved an oil spill. Furthermore, the plaintiff's co-employee was deposed approximately nine years after the accident, which could easily affect the recollection of specific details. Therefore, although the two accounts of this accident differ substantially, I agree that the employer failed to sufficiently rebut the evidence before the court that the plaintiff slipped on the oil. Therefore, there was no genuine issue of material fact as to the defendant's liability, and summary judgment was proper.
NOTES
[1] Sections 907, 908 and 909 provided for the payment of medical services and supplies, disability benefits and death benefits, respectively, under Title 33 of the United States Code.
[2] Subsection (b) of 33 U.S.C. § 905 states that an action against a vessel owner is separate from an action brought against an employer pursuant to Subsection (a). Additionally, in its capacity as vessel owner, Apex would not be precluded from raising the defenses of contributory negligence, assumption of risk, or negligence of a fellow servant. See Reichert, 794 F.2d at 1559.